H. F. WORSLEY v. M. L. AYRES, Appellant, and WILLIAM PHILPOTT.

**Principal and agent:** EVIDENCE OF AGENCY. A writing executed by
1 the principal in which he states that he will recognize any contract or promise made by his agent with reference to the business in which he is engaged is competent evidence of the agency, though not exhibited to the party with whom the agent is dealing.

**Sales:** EVIDENCE. In an action to recover of the seller of a horse
2 the difference between the amount received as earnings of the horse on plaintiff's two shares of stock therein, and the amount guaranteed by the seller, a written agreement to make good the difference, delivered to plaintiff in connection with his purchase of the first share of stock, was properly received in evidence as a part of the transaction.

**Agency:** DELEGATION OF AUTHORITY. While an agent can not dele-

gate his authority to enter into a contract for his principal, still he may employ another merely. as an amanuensis. Thus, where the agent delegated another to write and sign his principal's name to a contract with a third person, the transaction being authorized and done in the presence of the agent and the third person, it was not a delegation of the agent's authority.

**Evidence:** CONCLUSION OF WITNESS: HARMLESS ERROR. In a suit on a guarantee of the earnings of a horse, plaintiff was allowed to answer affirmatively, over an objection that the question called for a conclusion, whether the horse was in proper care of a man of experience in handling such horses, so that it would have a fair show: *Held,* that the question could hardly be construed as inquiring whether the horse was properly cared for, but if so construed the qualification of the witness to answer was not challenged and his answer therefore admissible; and further, that if the question amounted to an inquiry as to whether the custodian had experience, it called for a fact and not a conclusion; and further, that the inquiry seemed to assume that to give the horse a fair show he must have been in experienced hands, and as nothing further was elicited on the subject the ruling was not prejudicial, although such questions are not to be approved.

**Evidence:** HARMLESS ERROR: ORDER OF ADMISSION. Any error in admitting evidence of an admission by the agent of the seller, that he had sold an interest in the horse to plaintiff, was rendered harmless by his subsequent denial of such sale; thus rendering the question simply one of the order of receiving the evidence.

**Liability of principal for agent's acts:** ESTOPPEL. Where the evidence puts in issue the question of whether an agent executed a writing on behalf of his principal, and without the principal's knowledge, the court is justified in refusing to withdraw the writing from the consideration of the jury; and even though made without the principal's knowledge, if he accepts the benefits of the contract he is estopped to deny liability thereon.

**Sales:** CONTRACTS: MERGER. A written contract made by an agent guaranteeing certain earnings on an interest in a horse thereafter to be purchased, is not merged in the subsequent contract of sale warranting the animal, and agreeing to an exchange of him for another on certain conditions not relating in any way to the guarantee of earnings, although the sale contract contains a clause forbidding agents to alter the printed form of sale guarantee, and providing that the buyer shall accept the sale contract as the full and complete terms of purchase.

*Appeal from Union District Court.*—HON. H. M. TOWNER, Judge.

TUESDAY, NOVEMBER 23, 1909.

ACTION on contract resulted in a judgment in favor of the defendant Philpott and against the defendant Ayres. The latter appeals. *Affirmed.*

*Thos. L. Maxwell* and *Jennings & Mattox,* for appellant.

*E. A. Lee* and *P. C. Winters,* for appellee.

LADD, J.—On December 28, 1902, the defendant Ayres, through his agent, Philpott, sold to plaintiff and four others a stallion named "Sutton," at the price of $1,400. The agent had asked $2,000, and the plaintiff alleged that to induce him to buy a one-tenth share the following contract was executed: "We agree with Harry Worsley that if this one share of stock of $200 that he has taken in a horse, name of horse 'Sutton,' does not meet his payments, we will refund the shortage. M. L. Ayres, Wm. Philpott, Salesman." And, further, that to induce him to take another share the agent executed an additional contract covering both shares: "Kent, Iowa, Dec. 28, 1902. It is agreed with H. F. Worsley that he takes two shares in stallion 'Sutton,' and we agree that if said stallion does not meet his own payments then we will refund H. F. Worsley any shortage there may be on his $400 shares. M. L. Ayres, William Philpott." The income of the horse no more than paid expenses, and having paid the purchase price plaintiff demanded judgment against the defendants in the sum of $400. In his answer Ayres put in issue the agent's authority to execute both contracts, averred that in any event they were merged in the final

agreement of purchase, pleaded that the action was not in good faith, and that he had paid plaintiff all that was due him.    Philpott denied the genuineness of the second contract and averred that plaintiff had accepted $100 in satisfaction of the first.    Both pleaded the sale of the horse in the spring of 1908 for $1,000.    The jury returned a verdict in favor of Philpott and against Ayres for the sum of $177, and judgment was entered accordingly.

I.    The agent was called as a witness and testified that Ayres had given him the paper marked "Exhibit A," "so people would know that I had authority to act

1. PRINCIPAL AND AGENT: evidence of agency.

for him."    The exhibit was then received in evidence, over objection that it was immaterial.    It read: "To Hoom it may consern Eney Contract or Eney promises which this man Wm. Philpott makes I will recognise.    M. L. Ayres."    Even though this was not exhibited to plaintiff, it tended to show that Philpott not only was agent of Ayres, but that he had authority from Ayres to make any contract or promises with reference to the business in which he was engaged.    The writing was something more than a letter of introduction.    It was a distinct statement of the extent of the agent's authority.

II.    The contract on the first share, when offered in

2. SALES: evidence.

evidence, was objected to as immaterial.    It was part of the transaction, and for this reason the objection was rightly *overruled*.

III.    The plaintiff testified that subsequent to the execution of the first contract, Philpott found that it would be necessary to dispose of another share, and of-

3. AGENCY: delegation of authority.

fered to do so on the same terms; that this was agreed to and the second contract prepared in pursuance thereof, that Philpott directed his brother to prepare the same, and that this was done in the presence of all three.    This so far identified the paper as that of Philpott as to warrant its introduction

in evidence. True, the agent could not delegate his authority, and there was no attempt to do so. The brother merely acted as the agent's amanuensis, and the physical act of signing the names when thus directed was the same in law as though the agent had held the pen.

IV. The plaintiff was asked "if the horse was in the proper care of a man who had experience in handling stallions so that he had a fair show." After answering, "Yes, sir, he was," the defendant moved to strike the answer as "immaterial, incompetent, irrelevant, and asking for the conclusion of the witness," and the motion was overruled. The question can hardly be construed to inquire whether the horse was properly cared for; but if so, the qualification of the witness to answer was not challenged. If it be construed to inquire whether the custodian of the horse had had experience in handling stallions, then it called for a fact, and not a conclusion. The inquiry seems to assume that to give the horse a fair show he must have been in the keeping of an experienced man, and as nothing farther was elicited on the subject we are not inclined to regard the ruling as prejudicial, though interrogatories of the kind are not to be approved.

*4. EVIDENCE: conclusion of witness: harmless error.*

V. One McFee testified that shortly before the signing of the final contract of purchase he had a conversation with Philpott, and that the latter said he gave plaintiff the same he had to him and had given a contract for both shares. The answer was over objection, and a motion to strike was overruled. This was said in attempting to sell McFee one of the shares and shortly before the deal was closed. Its admissibility at the time was extremely doubtful; but subsequently the agent denied having sold the shares to plaintiff, so that at the most the testimony was received out of its proper order, in chief rather than in rebuttal, as

*5. EVIDENCE: harmless error: order of admission.*

. it should have been. In these circumstances the ruling ought not to be regarded as prejudicial.

· VI. At the close of the evidence the defendant Ayres moved that the contract for the $400 be withdrawn from the consideration of the jury. The motion was overruled, and rightly so. True, Ed Philpott testified

**6. LIABILITY OF PRINCIPAL FOR AGENTS ACTS: estoppel.** that it was executed after the purchase of the horse and without knowledge of Wm. Philpott, and the latter that it was signed without his knowledge; but as seen, plaintiff testified that it was prepared in the agent's presence and signed and delivered in pursuance of an express understanding that this should be done, and McFee testified that Philpott had told him of its execution. This evidence put in issue the question as to whether Wm. Philpott, as agent of Ayres, had executed the instrument. Again, it is said that Ayres was not aware of its existence until long afterwards, and then promptly repudiated it; but knowledge of the agent was imputed to the principal, and having received the benefits he must bear the burdens imposed by these agreements.

VII. Appellant contends that these contracts as a part of the negotiations preceding the purchase were merged in the guarantee agreement then executed. That agreement guaranteed the horse (1) to be service-

**7. SALES: contracts: merger.** ably sound; (2) that if he did not prove an average foal getter after fair trial he might be returned and another of equal value, "supposed to be sure," taken in his stead; (3) that an exchange for another not less in value might be made; (4) that in event of exchange the horse must be in the condition when received; and (5) that the guaranty was on condition that a monthly report of certain matters be made. It will be noted that none of these relate to the subject covered by the separate contracts with plaintiff; but a note followed the above with the signatures in these words: "Note. Each party

to this 'purchase, by accepting this slip, accepts the above as complete and full terms of their purchase, and you are to take notice that salesmen are forbidden to in any way change the printed form of this guarantee, and if changed it will not be accepted as changed by the seller. H. F. Worsley, Secretary. M. L. Ayres. Wm. Philpott." There was no change in the printed form, and the only question is whether plaintiff, "in accepting the above as complete terms of their purchase," waived the benefit of his previous contracts. We think not, for it relates only to the seller's obligations concerning the horse, and not to those assumed by the purchasers, or to the conditions of payment. Otherwise the purchasers' obligations to pay the price would be defeated thereby. The instrument does not touch the matter of payments, nor the conditions on which these were to be made, and in reference thereto the seller was bound to perform any contract or promise his agent might make.

Some objections are taken to the instructions; but aside from the points already noticed none are pressed in argument. The issues were clearly stated to the jury, and its conclusion has such support in the evidence as to preclude inference by this court. *Affirmed.*